# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| CHAZZ HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:20-cv-02143-JTF-atc |
| v. | ) |
| | ) |
| BILL SPEARS, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER DISMISSING COMPLAINT WITH PREJUDICE (ECF NO. 1),
DENYING LEAVE TO AMEND,
DENYING MOTIONS TO ISSUE SUMMONS (ECF NOS. 11 & 13),
DISMISSING CASE,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
NOTIFYING PLAINTIFF OF APPELLATE FILING FEE, AND
RECOMMENDING THAT THIS DISMISSAL BE TREATED AS A STRIKE
PURSUANT TO 28 U.S.C. § 1915(g)**

On February 27, 2020, Plaintiff Chazz Hill filed a *pro se* complaint pursuant to 28 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On March 3, 2020, the Court granted leave to proceed *in forma pauperis* because Hill satisfied his burden of showing that he was unable to pay the civil filing fee. (ECF No. 7.) At the time he filed his complaint and his *in forma pauperis* application, Hill had been released from confinement at the Shelby County Correctional Center (SCCC). (*See* ECF No. 2 at PageID 21 (Hill was "released from incarceration" and "currently living with family").)[1] According to his most recent submission in this case, Hill is presently residing in Memphis. (*See* ECF No. 13 at PageID 34.)

---

[1] The record is silent as to the dates of Hill's prior confinement at SCCC. (*See* ECF No. 1.) Presently, there is no record available as to Hill on the Tennessee Department of Correction's website. (*See* https://apps.tn.gov/foil-app/search.jsp.)

On July 24, 2020, Hill filed a Request For Summons To Be Served. (ECF No. 11.) On January 5, 2021, he filed another Motion To Issue Summons. (ECF No. 13.) Those motions are before the Court for consideration, along with the screening of his § 1983 complaint (ECF No. 1).

Asserting claims for deprivation of Plaintiff's First and Fourteenth Amendments and for violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc(a)(1)(A)–(B), Hill's § 1983 complaint names twelve Defendants in their individual and official capacities: (1) Bill Spears, the Deputy of SCCC; (2) Michael Howse; (3) Tonya Beasley; (4) Sandra Harber; (5) Julius Hawkins; (6) F/N/U Calhoun; (7) Eugene McIntyre; (8) Anita Taylor; (9) Water Gray, the manager of CBM Managed Services ("CBM"); (10) Toni Young, CBM's assistant manager; (11) Joseph Thomas; and (12) Paul Houston. The complaint seeks: (1) an injunction that orders the Defendants "to amend their policies to be in accordance with the law"; (2) compensatory damages; and (3) punitive damages. (*Id*. at PageID 15.) The Clerk shall modify the docket to add CBM Managed Services, Shelby County, and Shelby County Correctional Center as Defendants.

For the reasons explained below: (1) the complaint (ECF No. 1) fails to state a claim to relief and is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) and 28 U.S.C. § 1915A(b)(1)-(2); (2) leave to amend is **DENIED**; and (3) Plaintiff's Motions To Issue Summons (ECF Nos. 11 & 13) are **DENIED** as moot.

I.    **BACKGROUND**

Hill alleges that Defendants unlawfully burdened his observance of Rastafarianism, *see* ECF No. 1 at PageID 3, in the following manners:

(1)    *SCCC Programs' Grooming Requirements*: SCCC offers "programs and classes" to inmates seeking early release. The programs, which have grooming requirements, offer job

2

opportunities, recreation, and commissary privileges that are unavailable to SCCC's general population. (*Id*. at PageID 4.) Hill applied for a religious exemption from the programs' hair length requirements so that he could maintain his Rastafarian dreadlocks. His exemption was rejected, and he was denied participation. (*Id*. at PageID 3-4.) Defendant Howse "determined that [dreadlocks are] not a mandatory requirement of [Rastafarian] religion." (*Id*. at PageID 3.) Relying on Howse's determination, Defendant Beasley denied Hill's grievance about exemption denial. (*Id*. at PageID 4.) Defendant Spears denied Hill's appeal. (*Id*.) Hill contends that SCCC's grooming requirements substantially burdened his exercise of religion because they compelled him to choose between (1) violating his religious beliefs by cutting his hair and (2) participating in programs and classes that could assist him in obtaining early release. (*Id*.)

(2)     *Failure To Provide A Special Diet*:  In December 2017, CBM replaced SCCC's previous food service contractor. Defendant Chaplain Hawkins approved Hill's "special diet" of "whole and natural foods and poultry and fish" and submitted it to CBM personnel Gray and Young, who in turn told Hill that "there will no longer be any special diets, there is one menu and everyone will receive the same meals." (*Id*. at PageID 5.) Hill now "receiv[es] meals containing the foods that violate my religious beliefs." (*Id*.) Spears denied Hill's grievance appeal. (*Id*. at PageID 6.) Hill contends that Defendants' meal practices substantially burdened his religious exercise because they forced a choice between (1) eating regular meals or (2) starving. (*Id*.)

(3)     *Denial Of Headwear*:  In August 2018, Hill ordered religious headwear by mail. (*Id*. ("a crown / tam").) SCCC mail clerk Houston and SCCC counselor Thomas refused to deliver it to Plaintiff. (*Id*. (Hill could not have the headwear "because it's not a kufi").) Howse told Hill that Defendant "can't let me walk around with something that looks like that on my head." (*Id*. at PageID 7.) Spears denied Hill's grievance appeal. (*Id*.) The complaint makes similar allegations

concerning denial of Hill's request to wear a dashiki "in honor of our African roots." (*Id*. at PageID 11.) Hill contends that Defendants' denial of his access to a crown/tam and dashiki substantially burdened his exercise of religion. (*Id*. at PageID 7-8 & 11 (the SCCC "allows Muslims and Christians to wear kufis at all times").)

(4)     *Prayer Oils & Natural Hygiene Products*:  SCCC's "policy allows only Muslims, Christians, and Catholics [to have] prayer oils." (*Id*. at PageID 8-9.) However, Beasley denied prayer oils to Hill. (*Id*. at PageID 8.) Spears denied Hill's grievance appeal. (*Id*.) Plaintiff's request for "natural hygiene products" was also denied. (*Id*. at PageID 9 ("The use of all natural hygiene products is well-established in African culture … by not putting artificial substances into the body").) Hawkins told Hill that natural hygiene products are "not a mandatory requirement" of Rastafarianism and denied Hill's request. (*Id*.) Spears denied Hill's grievance appeal. (*Id*.)

(5)     *Kwanzaa Observance*:  To observe the African-American holiday of Kwanzaa, Hill requested "a feast and to receive a gift of items consistent with [SCCC] safety and security requirements." (*Id*. at PageID 10.) Hawkins forwarded Hill's request to SCCC administration. Spears denied it. (*Id*.) Hill contends that the denial substantially burdened his religious exercise. (*Id*. at PageID 10-11 ("Christians are allowed to receive foods and gift[s] for Christmas, [and] accommodations are made for Muslims during Ramadan and Catholics during Lent").)

(6)     *Catalogs Access*:  Hill alleges that SCCC's "policy ban[ning] all catalogs" substantially burdens his religious exercise because it prevents him from "order[ing] religious literature, headwear, dress, and objects while incarcerated." (*Id*. at Page ID 12.) SCCC mailroom supervisor Taylor censored a religious items catalog that Hill had received. Beasley denied Hill's grievance. Spears denied Hill's appeal. (*Id*.) Plaintiff contends that catalog deprivation

4

substantially burdened his religious exercise because "there is no way for me to order allowable religious items." (*Id.* ("[C]atalogs are allowed at other prisons").)

(7) *SCCC's Mail Policy*:  Hill alleges that SCCC's mail policy "is not reasonably related to a legitimate, neutral government interest" because it "ban[s] religious and nonreligious catalogs, postage stamps, urban publications, black authors, printed material, internet materials, and business mail." (*Id.* at PageID 13.)  The complaint does not describe how SCCC's mail policy particularly impacted Hill in any way. (*See id.*)

(8) *Access To The Courts*:  In August 2018, Plaintiff filed a grievance about: (1) not being permitted law library access to do research and drafting; (2) the mobile law library's materials being out-of-date; and (3) deprivation of electronic legal research access. (*Id.*)  Defendants Calhoun and McIntyre failed to respond to Hill's grievance within ten days as required by SCCC policy.  Beasley failed to take corrective action. (*Id.*)  Hill claims denial of access to the courts in violation of the First and Fourteenth Amendments. (*Id.* at PageID 13.)

## II.  LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

As to step one, in assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Under those

standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. In addition, Federal Rule of Civil Procedure 8 provides guidance on this issue. Even though Rule 8 only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases will accord slightly more deference to *pro se* complaints than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). That said, p*ro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

### III.    REQUIREMENTS TO STATE A CLAIM UNDER 42 U.S.C. § 1983

Hill sues under 42 U.S.C. § 1983. To state a claim under that statute, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H.*

6

*Kress & Co.*, 398 U.S. 144, 150 (1970). For his claims to succeed, Hill must satisfy these requirements.

IV. **DISCUSSION**

    A. **Claims For Money Damages Under RLUIPA; Injunctive Relief Claims Under § 1983 And RLUIPA**

*Money Damages Under RLUIPA*: Hill alleges that Defendants' conduct violated RLUIPA. (ECF No. 1 at PageID 3-14.) Under RLUIPA, the government may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability" without demonstrating that the burden: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a); *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). A plaintiff raising a claim pursuant to RLUIPA must "prove that the disputed policy substantially burdens his religious exercise." *Carrick*, 31 F. App'x at 179. The Supreme Court generally has found that a government's action constituted a substantial burden on an individual's free exercise of religion when that action forced an individual to choose between "following the precepts of her religion and forfeiting benefits" or when the action in question placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981).

Most significantly for Hill's case, the Supreme Court has held that monetary damages are not available under RLUIPA because the statute's provision for "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), does not abrogate the States' sovereign immunity under the Eleventh Amendment. *Sossamon v. Texas*, 563 U.S. 277, 285-93 (2011). Therefore, Hill is not eligible for money damages under RLUIPA. (*See* ECF No. 1 at PageID 15.)

7

*Injunctive Relief Claims Under § 1983 & Under RLUIPA*:  Hill was not confined at the time he filed this litigation, and he remains outside confinement.  (ECF No. 2 at PageID 21; ECF No. 13 at PageID 34.)  A prisoner's claims for injunctive relief are moot when the prisoner is transferred from the prison about which he complains.  *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003); *Mason v. Davis*, No. 2:19-cv-4502, 2020 WL 1695185, at *3-4 (S.D. Ohio Apr. 7, 2020) ("[A]n inmate's transfer or release ends the alleged violations of his or her constitutional rights, which 'render[s] the court unable to grant the requested relief'") (citation omitted); *Berryman v. Granholm*, 343 F. App'x 1, 4-5 (6th Cir. 2009) (RLUIPA claim seeking declaratory and injunctive relief was moot after inmate's transfer to a new prison).

Therefore, Hill's claims for injunctive relief under § 1983 and under RLUIPA are moot.[2]

---

[2]  Hill also lacks standing to assert claims on behalf of the entire inmate community at SCCC.  (ECF No. 1 at PageID 15.)  *See Jacobs v. Strickland*, No. 2:08-cv-680, 2009 WL 2476896, at *3 (S.D. Ohio Aug. 11, 2009).  "A prisoner cannot bring claims on behalf of other prisoners."  *Corn v. Sparkman*, No. 95-5494, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996).

As for Hill's injunctive relief request that SCCC amend its policies "in accordance with the law," *see* ECF No. 1 at PageID 15, "a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks omitted).  Nor is it within the province of this Court to direct the policies and operations of state correctional facilities.

Moreover, Hill's injunctive relief claims do not allege facts demonstrating a non-speculative, imminent threat of ongoing or repeated injury.  Such a showing is necessary to demonstrate a redressable injury-in-fact to him.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 966 (6th Cir. 2009).  That is, Hill does not demonstrate that "'he personally would benefit in a tangible way from the court's intervention.'"  *American Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 670 (6th Cir. 2007) (quoting *Warth v. Seldin*, 422 U.S. 490, 505, 508 (1975)).

**B. Hill's Claims For Money Damages Under § 1983 Are Time-Barred**

Hill alleges claims under § 1983 for:

(1) deprivation of his First[3] and Fourteenth Amendment rights in arising from: (a) his exclusion from SCCC programs because of their grooming requirement, ECF No. 1 at PageID 3-4; (b) denial of a "whole and natural foods" diet, *id*. at PageID 5-6; (c) denial of a crown/tam and a dashiki, *id*. at PageID 6-8 & 11; (d) denial of prayer oils, *id*. at PageID 8-9; (e) denial of "natural hygiene products," *id*. at PageID 9-10; (f) denial of a feast and gifts for Kwanzaa, *id*. at PageID 10-11; (g) SCCC's policy banning "all catalogs," *id*. at PageID 12; (h) SCCC's Mail Policy, *id*. at PageID 13; and

(2) denial of access to the courts.[4] (*Id*, at PageID 13.)

The governing statute of limitations bars all of Hill's § 1983 claims.

A § 1983 action brought in a federal court in Tennessee is subject to a one-year statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); Tenn. Code Ann. § 28-3-104; *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004). When the statute begins to run, however, is an issue of federal law. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the

---

[3] The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion," and it has been incorporated against the states via the Fourteenth Amendment. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 5 (1947). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

[4] To state a claim that defendants interfered with his right to access the courts, a litigant must "show that the defendants have scuttled his pursuit of a 'nonfrivolous, arguable' claim." *Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

injury forming the basis of the claim is discoverable, *see Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citation omitted), or when the cause of action is complete. *See, e.g., Dibrell v. City of Knoxville, Tennessee*, 948 F.3d 1156,1162 (6th Cir. 2021).

The latest-occurring date that Hill's complaint identifies is August 2018. (ECF No. 1 at PageID 6 & 13.) Since the limitations period for § 1983 actions arising in Tennessee is one year, the statute of limitations for Hill's § 1983 claims expired in August 2019. However, Hill filed his complaint on February 27, 2020. (ECF No. 1.) Even liberally construing the complaint in his favor, Hill alleges no facts demonstrating any conduct by Defendants on or after February 27, 2019. That is, Hill's complaint describes no conduct that occurred or that was discoverable only within the limitations period. Therefore, all of his complaint's § 1983 claims are barred by the statute of limitations, including his claims for First Amendment deprivations, Fourteenth Amendment violations, and denial of access to the courts.[5]

---

[5] Beyond the untimeliness of Hill's claims, he fails to sufficiently allege facts for cognizable § 1983 claims. For example:

(a) Hill does not describe any CBM policy or custom at all, let alone demonstrate that it was behind the conduct of which he complains. *See Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) ("A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983").

(b) Hill may not premise a § 1983 claim on contentions that SCCC's grievance process was inadequate. (*See* ECF No. 1 at PageID 4-13.) *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) ("There is no inherent constitutional right to an effective prison grievance procedure").

(c) Hill does not state a claim against Shelby County because he does not allege that he incurred a constitutional deprivation due to execution of a Shelby County policy or custom. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (to demonstrate municipal liability, a plaintiff "must (i) identify the municipal policy or custom, (ii) connect the policy to the municipality, and (iii) show that his particular injury was incurred due to execution of that policy").

(d) To the extent Hill asserts a claim against SCCC itself, his efforts are not well taken. A jail is not a "person" subject to suit under § 1983. *See Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000).

For all of the foregoing reasons, the complaint (ECF No. 1) fails to state a claim to relief and is **DISMISSED WITHOUT PREJUDICE** in its entirety.

## V. AMENDMENT UNDER THE PLRA

The Court also **DENIES** leave to amend under 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1)-(2). The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). In fact, the Sixth Circuit prefers "liberality" in allowing amendment at the screening stage under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019). And the Court has also stated "[i]f it is at all possible that the party ... can ... state a claim for relief, the court should dismiss with leave to amend." *Id.* (internal quotation marks omitted).

Even so, the Court finds that this is the rare case where it would not be possible for Plaintiff to amend his complaint to state a claim for relief because: (1) Hill is not eligible for money damages under RLUIPA; (2) his claims for injunctive relief under § 1983 and under RLUIPA are moot; (3) all of his § 1983 claims are barred by the statute of limitations. So in this case, amendment would be futile because Plaintiff does not have actionable claims even if he amends. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001); *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001). Therefore, Plaintiff should not be given the opportunity to amend his complaint.

## VI. APPELLATE ISSUES

Under Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court has to also consider whether an appeal by Plaintiff here would be taken in good faith. *See Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999). Under Rule 24(a), if the district court permits

a party to proceed *in forma pauperis*, that party may also proceed on appeal *in forma pauperis* without further authorization. That is, unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*." Fed. R. App. P. 24(a)(3)(A). If the district court denies pauper status, the party may move to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)–(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). And the test for whether a party appeals in good faith is if the litigant seeks appellate review of any issue that is not frivolous. *Id.* "It would be inconsistent for a court to determine that a complaint should be dismissed prior to service on Defendants but has sufficient merit to support an appeal *in forma pauperis*." *DePriest v. Prestress Servs., Inc.*, No. 13-2768-JDT-cgc, 2014 WL 1269933, at *1 (W.D. Tenn. Mar. 27, 2014) (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983)). For the same reasons this Court dismisses Plaintiff's claims as time-barred and for failure to state a claim, the Court finds that an appeal would not be taken in good faith. The Court therefore **CERTIFIES**, under Federal Rule of Appellate Procedure 24(a), that any appeal here by Plaintiff would not be taken in good faith. And the Court **DENIES** leave to proceed on appeal *in forma pauperis*. If Plaintiff appeals, he must pay the full $505 appellate filing fee or move for leave to appeal *in forma pauperis* with a supporting affidavit in the Sixth Circuit. *See* Fed. R. App. P. 24(a)(5).

## VII.   CONCLUSION

For all of the reasons explained above:

(1)   The complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE** in its entirety for failure to state a claim to relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1)-(2);

(2)      Leave to amend is **DENIED**;

(3)      Hill's Motions To Issue Summons (ECF Nos. 11 & 13) are **DENIED** as moot, given that the Court is dismissing the complaint with prejudice for failure to state a claim to relief; and

(4)      The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated ... brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). For § 1915(g) analysis of Plaintiff's future filings, if any, the Court recommends that the instant dismissal of Plaintiff's claims under § 1983 in this case be treated as a strike pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 24th day of September, 2021.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE